FILED

2005 May-27  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **ARTHUR SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NUMBER |
| vs. | ) | 7:03-cv-1449-UWC |
| | ) | |
| **ADVANCE AUTO STORES COMPANY**, | ) | |
| **INC., d/b/a ADVANCE AUTO PARTS**, | ) | |
| | ) | |
| Defendant. | ) | |


**MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT**

In this case brought under 42 U.S.C. § 2000e *et seq.* ("Title VII"),  Plaintiff Arthur

Smith ("Smith") claims that Defendant Advance Auto Stores Company, ("Advance" )

discriminated against him because of his race.  Specially, Smith brings the following

claims: wrongful termination, hostile work environment, retaliation, and discrimination in

pay, as well as the terms and conditions of employment.

Based on the undisputed facts construed in a light most favorable to the Plaintiff,

Defendant's Motion for Summary Judgment is due to be GRANTED as to Plaintiff's

claims for hostile work environment, retaliation, and discrimination in pay and the terms

and conditions of employment.   Defendant's Motion for Summary Judgment is due to be

DENIED as to Plaintiff's termination claim.

## A.  FINDINGS OF UNDISPUTED FACTS

1.  Plaintiff is a black male.  On February 6, 1994, Plaintiff began working for Advance as an Assistant Manager-In Training ("AMIT"), at its store in Alexander City, Alabama.

2.  On August 14, 1994, Plaintiff was promoted from AMIT to Assistant Manager.

3.  On November 15, 1998, Plaintiff was promoted from Assistant Manager to Store Manager.  Plaintiff worked in this position for approximately three and one-half years, until he was terminated on March 12, 2003.  (Doc. 20, Johnston Decl. at Ex. 1.)

4. During Plaintiff's tenure as Store Manager, Advance hired Jason Rickles, who is white, to the position of  "Commercial Parts Manager," a position subordinate to that of Store Manager.   Rickles was a former commercial parts manager for Carport Auto Parts ("Carport"), and Advance hired him as the result of a merger between Advance and Carport.   Advance hired Rickles at the same rate of pay he earned while at Carport; this rate of pay was equivalent to Plaintiff's salary as Store Manager.  (Doc. 20, Pl.'s Dep. at p. 56, Johnston Decl. at Ex. 1.)

5. Pursuant to Advance company policy, all employees are given periodic Performance Appraisals by their supervisor.  These Performance Appraisals are given during an employee's first ninety days of employment, upon demotion or transfer, and on an annual basis.  (Doc. 20, Johnston Dec. at Ex. 15.)    The Performance Appraisal is conducted by the supervisor's  filling out a standard "Performance Appraisal" form.  The

form lists fifteen areas of evaluation.[1]  (Doc. 20, Pl.'s Dep. at Ex. 9.)   In each area of

evaluation, an employee may be rated as either (1) exceeds, (2) meets, or (3) fails to meet

expectations.  (*Id*.)

6.  On November 14, 1999, Plaintiff received his first annual Performance

Appraisal as Store Manager.   Plaintiff's District Manager rated Plaintiff as failing to meet

expectations in two (2) of fifteen (15) areas, including sales goals and store profits.  (Doc.

20, Pl.'s Dep. at Ex. 9.)    Plaintiff exceeded expectations in safety awareness, and met

expectations in all remaining twelve categories.  (*Id*.)

7.  On November 12, 2000, Plaintiff received his second annual Performance

Appraisal as Store Manager.   Plaintiff failed to meet expectations in only one of the

fifteen areas– company policies and procedures.   (Doc. 20, Pl.'s Dep. at Ex. 10.)

Particularly, Plaintiff's District Manager noted that Plaintiff failed to ensure proper refund

accountability and allowed theft of $10,000 to occur through falsified returns.  (*Id*.)

8.  On his Performance Appraisal dated November 13, 2002, Plaintiff failed to meet

expectations in five (5) of fifteen (15) areas, including planning, training, inventory

management, and store profit.  (Doc. 20,  Johnston Decl. at Ex. 9.)  Plaintiff met or

exceeded expectations in all other areas.  (*Id*.)

---

[1] The fifteen areas are as follows: (1) Customer Service, (2) Communications Skills, (3)
Administrative Skills, (4) Planning Skills, (5) Leadership Skills, (6) Dependability, (7)
Training/Development, (8) Company Policies and Procedures, (9) Sales/Goals, (10)
Payroll/Budget Management, (11) Shrinkage/Expense Control, (12) Inventory Management, (13)
Store/Department Appearance, (14) Safety Awareness, and (15) Store Profit.

9.  In addition to individual Performance Appraisals, Advance auditors and district managers also  perform Risk Management Audits, "Customers are Coming" Checklists, and District Manager Store Evaluations ("DM Evaluations").  These evaluations are conducted  to review the store's overall compliance with the following: company policies on operations, appearance, customer service, sales, and profits.  According to company standards, the highest score attainable is 100, and a score below 70 is unsatisfactory.

10. On February 19, 2003, Eric Williams, an Advance auditor,  conducted a Risk Management Audit of Plaintiff's store, which yielded a score of 46/100, an unsatisfactory rating.   (Doc. 20, Pl.'s Dep. at Ex. 1.)     As a result, Plaintiff received an "Employee Action Report," *i.e.*, a "write-up."  Plaintiff was cited for not having his team complete a "to-do" list compiled by his district manager.   (Doc. 20, Pl.'s Dep. at Ex. 13.)

11.     On February 26, 2003, Plaintiff's district manager performed a "Customers are Coming" Spring 2003 Checklist, to evaluate the store's readiness for customers.  Plaintiff's store received an overall 51.8%, an unsatisfactory rating.   Plaintiff was cited for failing to meet Advance's "Grand Opening Look Daily ("GOLD") standard, and for his need to focus on sales urgency.    (Doc. 20, Pl.'s Dep. at Ex. 14.)

12.  From September 2001, until Plaintiff was terminated in March 2003, Plaintiff's District Manager, Jack Johnston, conducted six District Manager Store Evaluations ("DM Store Evaluations").   In each of the DM Store Evaluations, Plaintiff's store received an unsatisfactory score.

13. For example, in September, October, and November of 2001, Plaintiff's store received the following unsatisfactory scores, respectively: 30%, 66%, 68%.  (Doc. 20, Johnston Decl. at Exs. 7, 8, 9.)

14. During the following year of 2002, Johnston conducted two additional DM Store Evaluations of Plaintiff's store and its ratings began to decline.  In August 2002, and December 2002, District Manager Johnston gave Plaintiff's store scores of 63% and 57%, respectively.  (Doc. 20,  Johnston Decl. at Exs. 10-12.)

15.  In February 2003, Johnston gave Plaintiff's store a 55% score. Johnston also gave Plaintiff a "to-do list" to improve the store's appearance and issued a "Final Corrective Warning" regarding job performance.   Johnston advised Plaintiff that he had sixty days to improve the store or further disciplinary action would be taken.  (Doc. 20, Johnston Decl. at Exs. 10-13.)

16. Johnston evaluated Plaintiff's store a final time on February 26, 2003, and gave Plaintiff's store a score of 51%.  Johnston then terminated Plaintiff on March 12, 2003.

17.  Throughout his employment with Advance, Plaintiff's district manager was unfriendly towards Plaintiff and he was disrespected by subordinate employees.   Plaintiff also could not take a vacation at the time of his choosing because of his position as Store Manager, and he did not receive a final paycheck following his termination. (Doc. 20, Pl.'s Dep. at Ex. 16.)

## B.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).

The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which the moving party believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When ruling on a motion for summary judgment, the court must view the facts in a light most favorable to the non-moving party.  *See, e.g., Raney v. Vinson Guard Serv.*, 120 F.3d 1192, 1196 (11th Cir. 1997).  "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' . . . and draw 'all justifiable inferences . . . in his favor  . . . ." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).  "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).   Evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact. *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498

(11th Cir. 1989).

## C. DISCUSSION

### 1.      Termination Claim

In order to state a *prima facie* case of wrongful discharge under Title VII, a plaintiff must prove the following: (1) that  he was a member of a protected class, (2) he was qualified for the position, (3) he was terminated, and (4) that similarly situated employees outside of the protected class were treated more favorably.   *See Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).   Once the plaintiff carries his burden of proof, the defendant must then articulate a valid, non-discriminatory reason to justify the adverse employment action.  The plaintiff then has the burden of proving that the articulated reason for the discharge is either a pretext for discrimination or is unworthy of credence.   *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 920-21 (11th Cir. 1993).

This Court is satisfied that Plaintiff has proven his *prima facie* case for wrongful termination.

Defendant contends that it had a legitimate reason for terminating Plaintiff. Defendant argues that it terminated Plaintiff because of his substandard job performance.

This is evidenced by the unsatisfactory ratings the Alexander City Store received on its District Manager Evaluations while under Plaintiff's leadership as Store Manager.  (*See* Doc. 20,  Johnston Decl. at Exs. 7, 8, 9.)

In response, Plaintiff argues that Advance's arguments are pretextual, because Plaintiff generally met or exceeded expectations in each of his *individual* Performance Appraisals.   In fact, the record shows that for each of his individual Performance Appraisals, Plaintiff met or exceeded expectations in more areas than he failed to meet expectations.  (Doc. 20, Pl.'s Dep. at Exs. 9-10, Johnston Decl. at Ex. 9.)

Because the record contains evidence that Plaintiff met and exceeded performance expectations, a genuine issue of material fact exists as to whether Advance's proffered reasons for terminating Plaintiff because of his substandard job performance are unworthy of credence.  Accordingly, summary judgment is inappropriate for Plaintiff's wrongful termination claim.

### 2.    Hostile Work Environment Claim

To establish a *prima facie* case for a  hostile work environment claim, a plaintiff must show that (1) he belongs to a protected group, (2) that he was subjected to unwelcome harassment, (3) the harassment was based on his race, (4) that the harassment was sufficiently pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) a basis for holding the employer liable.  *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *EEOC v.*

*Beverage Canners*, 897 F.2d 1067 (11th Cir. 1990).  The environment must be of  such

that a reasonable person would find it hostile or abusive, and the plaintiff must

subjectively perceive it as so.  *Miller v. Kenworth of Dothan, Inc*, 277 F.3d 1269 (11th Cir.

2002).  In evaluating the severity of the harassment, the Eleventh Circuit considers the

following: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the

conduct is physically threatening or humiliating, and (4) whether the conduct unreasonably

interferes with the employee's job performance.  *Miller*, 277 F.3d at 1276.  Discourteous,

off-handed comments are insufficient to state an actionable hostile work environment,

particularly where a plaintiff refers only generally to racial references that supervisors and

co-workers make.  *See Edwards v. Wallace Comty Coll*. 49 F.3d 1517, 1523 (11th Cir.

1995).

Plaintiff complains of the following: (1) having unfriendly relations with the district

manager, (2) being disrespected by subordinate employees, (3) not being able to take a

vacation at the time of his choosing, and (4) not receiving a final paycheck following his

termination.  (Doc. 20, Pl.'s Dep. at pp. 33, 37, 44-47, 108.)   Assuming Plaintiff's

allegations are true, the tension between Plaintiff and his district manager is not

sufficiently severe or physically threatening, particularly where Plaintiff has not presented

specific instances of improper conduct or comments that are based on racial animus.  *See*

*Edwards,* 49 F.3d 1523.   Similarly, Plaintiff's complaint that he was disrespected by

subordinate employees is also insufficient to create a severe hostile work environment.  *Id*.

Finally, Plaintiff's complaints of not receiving a final pay check and not being able to take a vacation at his choosing were not recurring and could not have unreasonably interfered with the performance of his job duties so as to be severe and pervasive.  *Miller*, 277 F.3d at 1276.  Without more, the conduct Plaintiff complains of does not rise to the level of severe and pervasive working conditions necessary to state an actionable hostile work environment claim.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

**3. Pay Claim**

In order to plead a *prima facie* case for discrimination in pay, plaintiff must allege the following: (1) he was a member of a protected class, (2) he was subjected to an adverse employment action, (3) his employer treated similarly situated employees who were not members of his protected class more favorably, and (4) he was qualified for the job or benefit at issue.  *See Gills v. Ga. Dep't of Corrections,* 400 F.3d 883 (11th Cir. 2005) (citing  *McDonnel Douglas Corp. v. Green,* 411 U.S. 792 (1973)).

Defendant is entitled to summary judgment on Plaintiff's pay claim because Plaintiff has failed to prove at least one element of his *prima facie* case.  Specially, Plaintiff has not advanced any evidence proving that he, as a Store Manager, was similarly situated with the comparator he has identified–Jason Rickles, a subordinate white employee who was hired as a commercial parts manager.

Assuming *arguendo*, that plaintiff has pled a *prima facie* case for discrimination in

pay, Defendant would still be entitled to summary judgment on Plaintiff's pay claim, for the following reason.   Defendant contends that it had a non-discriminatory reason for paying Rickles at an equivalent rate of pay to Plaintiff.   Defendant asserts that it hired Rickles at the same rate of pay he earned at Carport prior to the Advance-Carport merger. Defendant argues it did this for all Carport employees who were transferred into Advance stores.   Plaintiff fails to rebut this argument in his opposing brief, and thus has abandoned this claim.   Accordingly, Defendant is entitled to summary judgment as to Plaintiff's pay claim.

### 4.      Retaliation Claim

While Plaintiff alleges retaliation in his Complaint, he fails to address the retaliation claim in his brief in opposition to Defendant's Motion for Summary Judgment. (*See* Doc. 35, Pl.'s Br.)  Because Plaintiff has abandoned his claim for retaliation, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.   *See Access Now  v. Southwest Airlines Co.*, 385 F.2d 1324 (11th Cir. 2004)(stating "[t]he law by now is well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

### 5.      Terms and Conditions Claim

As with his retaliation claim, Plaintiff has also abandoned his terms and conditions claim, for he fails to address or even mention the words "terms and conditions" in his

brief.  (*See* Doc. 35, Pl.'s Br.)   Accordingly, Defendant is entitled to summary judgment as to any claim Plaintiff may have had with respect to discrimination in the terms and conditions of his employment.  *See Access Now* , 385 F.2d 1324 (11th Cir. 2004).

## E. CONCLUSIONS OF LAW

1.     A genuine issue of material fact exists as to whether Defendant's proffered reasons for terminating Plaintiff are pretextual.

2.     Plaintiff has failed to prove a *prima facie* case as to his hostile work environment claim, because the conduct he complains of is not sufficiently severe or pervasive as to alter the terms and conditions of employment.

3.     Plaintiff has failed to prove a *prima facie* case of discrimination in pay, because he has failed to prove that he and the comparator he identified were similarly situated.

4.     Plaintiff has failed to prove a *prima facie* case of retaliation because he has abandoned this claim.

5.     Plaintiff has failed to prove a *prima facie* case of discrimination in the terms and conditions of his employment, because he has abandoned this claim.

Based on these Findings of Undisputed Facts and Conclusions of Law, Defendant Advance Auto Stores is entitled to summary judgment on Plaintiff's claims for hostile work environment, retaliation, and discrimination in pay as well as the terms and

conditions of employment.  Defendant is not entitled to summary judgment on Plaintiff's wrongful termination claim.

   Done this 27th day of May, 2005.


   _____
          U.W. Clemon
   Chief United States District Judge